The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,

v.

ROBERT W. BLANCHETTE, Richard C. Bond and John H. McArthur, in their capacity as Trustees of the Property of Penn Central Transportation Company, Debtor, Consolidated Rail Corporation, a corporation, and Norfolk & Western Railway Company, a corporation, Appellees.

No. 79–2322.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1980.

Decided Aug. 18, 1980.

---

David P. Batow and Ellen Lubarsky, The Atchison, Topeka and Sante Fe Railway Company, Chicago, Ill., for appellant.

Bruce C. Spitzer, Richard M. Kates, Chicago, Ill., for appellees.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and GRANT, Senior District Judge.*

FAIRCHILD, Chief Judge.

The single issue of statutory construction presented by this appeal is what limitations period applies to a suit brought under section 15(11) of the Interstate Commerce Act.[1] We conclude that the two-year period of section 16(3)(b) applies and thus affirm the judgment of the district court dismissing the complaint as untimely.

Santa Fe's complaint was filed on November 4, 1977. It alleged that on or about November 7, 1974 seven carloads of steel were tendered to the Penn Central for shipment from Cleveland, Ohio to Portland, Oregon under bills of lading designating the Santa Fe as one of the intermediate carriers, and that contrary to those instructions, the steel was routed to the Norfolk and Western Railway instead of to the Santa Fe. The defendants moved to dismiss the suit as untimely and those motions were granted in October, 1979. This appeal followed.

Santa Fe's suit was brought under 49 U.S.C. § 15(11), which provides in part as follows:

"*Liability of carriers where property is delivered contrary to routing instructions.* Whenever property is diverted or delivered by one carrier to another carrier contrary to routing instructions in the bill of lading, unless such diversion or delivery is in compliance with a lawful order, rule, or regulation of the Commission, such carriers shall, in a suit or action in any court of competent jurisdiction, be jointly and severally liable to the carrier thus deprived of its right to participate in the haul of the property, for the total amount of the rate or charge it would have received had it participated in the haul of the property."

Although the possibility that a state statute of limitations might apply was extensively briefed in the district court, our recent decision in *Chicago and North Western Transportation Company v. The Atchison, Topeka, and Santa Fe Railway Company,* 609 F.2d 1221 (1979) effectively forecloses that possibility. The question remains, however, which federal statute should apply. We are presented with two alternatives, both found in section 16(3) of the Act.

The Santa Fe argues that the limitations period of section 16(3)(a) is the one correctly applied to its suit. That section provides:

"(3)(a) All actions at law by carriers subject to this chapter for recovery of their charges, or any part thereof, shall be begun within [three] years from the time the cause of action accrues, and not after."

Since the statutory remedy for freight diversion is the recovery by the deprived carrier of the rate it would otherwise have received, the Santa Fe argues that an action under 15(11) is essentially one for the "recovery of charges." Thus the three-year period of 16(3)(a) would apply by its own terms.

The defendant railroads, however, assert that the remedy provided by 15(11) is more in the nature of damages and that the two-year limitations period of § 16(3)(b) therefore applies. That section states:

"All complaints against carriers subject to this chapter for the recovery of dam-

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. 49 U.S.C. § 15(11), since codified by the Revised Interstate Commerce Act of 1978 as 49 U.S.C. § 11710. Except as it becomes necessary to refer to changes made by the 1978 Act, all references will be to the prior Act.

ages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph." [2]

We do not think that either interpretation is so clear as to foreclose a search for further indications of congressional intent. The parties have suggested two places in which that intent might be found. The first, of course, is in the original legislative history of section 15(11). The second is in the very recent revisions of the Interstate Commerce Commission Act. We have examined both and conclude that both lend more support to the defendant railroads' position than they do to the Santa Fe's.

The prohibition against freight diversion and the right of the deprived railroad to sue the offending carriers for the full rate it would have received but for the diversion were enacted as part of the Transportation Act of 1920. The contemporaneous legislative materials include only four references to this section of the Act.[3] The first is the report of the House Committee on Interstate and Foreign Commerce, which includes the statement that

"[Under this section] where a carrier suffers loss by reason of the diversion or delivery by one carrier contrary to the routing instruction on the bill of lading . . . such carrier shall have a right of action *for the recovery of loss* of full freight charges by reason of such diversion or delivery.[4] (Emphasis added.)

The second is from the Conference Report:

"[The House bill included a provision that] the carrier thus deprived of the right to participate in the haul of the property should have a *right of action* against the carrier by which or to which

such traffic was unlawfully diverted for the total amount of the rate or charge it would have received had it participated in the haul. . . . The Senate amendment contained a similar provision, but . . . did not clearly give a right of action against the initial carrier guilty of diversion. It also based *the amount of damages* upon revenues accruing from the diverted traffic. The conference bill . . . accepts the House provision. . . . [5] (Emphasis added.)

There are also two excerpts from speeches given by the chairmen of the House and Senate Committees on Interstate Commerce. The first is from a speech given by Mr. Esch of Wisconsin, Chairman of the House Committee.

"We say in this bill 'For such diversion of traffic we give you the right *to sue in damages* for the full amount of freight charges which you would have earned had the traffic not been diverted.' . . . We think that by putting in this sort of penalty provision we may stop such diversion or at least lessen the practice." [6] (Emphasis added.)

Finally there is a speech by Senator Cummins of Iowa:

"It has been rather common in the past for railroad companies which were not satisfied with the routing which the shipper had determined upon to deliberately and knowingly deliver it to some other line with which the . . . carrier . . . had more intimate relations. . . . *There has been no remedy for that.*

"The Committee . . . has corrected it by providing that the line from which the traffic is thus diverted shall be entitled to recover its proportion of the

2. This limitations period, when appropriate, applies to direct actions against carriers as well as to complaints filed with the Interstate Commerce Commission. *A. J. Phillips Company v. Grand Trunk Western Railway Co.*, 236 U.S. 662, 667, 35 S.Ct. 444, 445, 59 L.Ed. 774 (1915); *Kansas City Southern Ry. v. Wolf*, 261 U.S. 133, 139, 43 S.Ct. 259, 260, 67 L.Ed. 571 (1923).

3. These have been collected by Rogers MacVeagh in his comprehensive treatise on the 1920 Act. R. MacVeagh, *The Transportation Act of 1920* (1923).

4. H.R.Rep.No.456, 66th Cong. 1st Sess. (1919).

5. H.R.Rep.No.650, 66th Cong., 2nd Sess. (1920).

6. 58 Cong.Rec. 8317 (1919).

earnings from the through rate *just the same as if it had carried the traffic,* and the line over which the traffic may actually go wrongfully will have the satisfaction of doing the business for nothing, *a penalty* which I think will very soon bring an end to the very objectionable practice.[7] (Emphasis added.)

Although the Santa Fe can point to Senator Cummins' remarks about a recovery "just the same as if it had carried the traffic" in support of its view, overall the language is about "remedies," "recovery of loss," "penalties" and, explicitly, "damages." This suggests that the sponsors and supporters of the Bill saw the remedy provided by section 15(11) as more akin to damages than to a rate or charge. It would follow that the limitations period is the two-year period established for damage actions rather than the three-year period established for the recovery of "charges."

■ Our attention is also drawn to the 1978 codification of the Interstate Commerce Act. Although the 1978 Act was ostensibly intended to make no substantive changes in existing law, there were nonetheless changes in wording which, the parties argue, throw additional light on the question of statutory interpretation. We note, of course, that the views of a later Congress cannot be accorded "the weight of contemporary legislative history" in a consideration of the intent of an earlier one. *Cannon v. University of Chicago,* 441 U.S. 677, n.7, p. 687, 99 S.Ct. 1946, 1952, n.7, 60 L.Ed.2d 560 (1979). Nevertheless, we believe that to the extent the revisions do shed any light on our question, they provide additional support for application of the two-year, rather than the three-year, rule.

The Santa Fe begins by pointing out that § 11710 of the revised Act (formerly section 15(11)), gives the carrier from which traffic has been diverted the right to recover the total amount of the "rate" (instead of "rate or charge") which it would have received absent the diversion. The revisers' notes state that the change was made in light of

the definition of "rate" in § 10102 as "rate, fare, or charge for transportation." In turn, the three-year limitations period (now found in § 11706) applies to any action to recover "charges for transportation." Since the wording of § 11706 ("charges for transportation") is now identical to the definition of the word "rate" in § 10102, which in turn is incorporated into § 11710, the argument is that an action under § 11710 is an action to recover "charges for transportation" and this fits squarely within the three-year period provided by § 11706.

We do not find this argument significantly more persuasive than the similar argument made about the original language of 15(11) and 16(3)(a) (*supra,* p. 3). We are persuaded more by the changes that have been made in the limitations section itself. The equivalent of § 16(3)(a) is now found in § 11706(a), which reads:

(a) A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must begin a civil action to recover charges *for transportation or service provided by the carrier* within 3 years after the claim accrues. (Emphasis added.)

If this change in the Act has any significance to our case, it must be as an expression of congressional intent that the three-year limitations period is to apply when a carrier is seeking to recover for services it has performed. Here, of course, Santa Fe performed no services, either for the shipper or for the defendant railroads. Rather than supporting the Santa Fe's position, we think the 1978 revisions weaken its position.

The Santa Fe has two final arguments. The first is that the limitations periods of the new § 11706 which apply to actions seeking damages refer only to specific types of actions, not including actions brought under § 11710. It is true that sections 11706(c)(1) and (c)(2) provide a two-year limitations period for actions brought under 11705(b)(2) and 11705(b)(3) respectively. Section 11705(b)(2), however, is itself a gen-

---

7. 59 Cong.Rec. 143 (1919).

eral damages provision.[8]  We do not agree therefore that the changes in § 11706 represent a congressional intent that the two-year limitation on damages actions is inapplicable to an action such as this seeking the statutory remedy for unlawful diversion of traffic.

Finally, the Santa Fe argues that custom and practice in the railroad industry support a three-year statute of limitations. We have considered this argument, which has its basis in the accounting rules of the Association of American Railroads, and do not find it persuasive.[9]

Accordingly, the judgment appealed from is affirmed.

8.  49 U.S.C. § 11705(b)(2) states:

"(2) A common carrier providing transportation subject to the jurisdiction of the Commission under subchapter I or III of chapter 105 of this title is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this subtitle."

Subchapter I and III of chapter 105 describe the Commission's jurisdiction over rail and water carriers.  "This subtitle" is the revised Interstate Commerce Act.

9.  The time limits set forth in the Interstate Commerce Act are jurisdictional.  *A. J. Phillips Co. v. Grand Trunk Washer R. Co.*, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915).